Anthony T. Ditty (SBN 105597)
tonyditty@gmail.com
**LAW OFFICES OF ANTHONY T. DITTY**
1017 E. Grand Ave.
Escondido, CA 92025
Tele (760) 747-1200 Fax (760) 747-1188

Kerry K. Fennelly (SBN 232621)
Valentina Mindirgasova (SBN 272746)
kfennelly@donaldsonandcornwell.com
vmindirgasova@donaldsonandcornwell.com
Cornwell & Baldwin
1017 E. Grand Avenue
Escondido, CA 92025
Phone: (760) 747-1100
Fax: (760) 747-1188

Attorneys for Plaintiffs,
GCIU-Employer Retirement Fund and
Board of Trustees of the
GCIU-Employer Retirement Fund

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND AND BOARD OF TRUSTEES OF THE GCIU-EMPLOYER RETIREMENT FUND<br><br>Plaintiff,<br>v.<br><br>QUAD/GRAPHICS, INC.,<br>Defendant. | CASE NO. 2:16-CV-00100<br><br>**COMPLAINT** |

## INTRODUCTION

1.　Plaintiffs, GCIU - Employer Retirement Fund and Board of Trustees of the GCIU-Employer Retirement Fund (collectively "ERF") bring this action against Defendant Quad/Graphics, Inc. ("Quad") pursuant to the provisions of Title IV of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1381 et seq., as a collection action for the recovery of interim payments on an

employer's withdrawal liability as permitted under 29 U.S.C. §§1399(c)(2) and 1451(a)(1) and to collect on contributions owed but unpaid.

2. The parties are presently arbitrating a dispute arising out of ERF's assessment of withdrawal liability against Quad. To date, Quad has failed to continue to make interim payments of the assessed withdrawal liability while arbitration is pending, an obligation arising under ERISA, 29 U.S.C. §§1399(c)(2) and 1401(d).

3. As a matter of law, Quad is required to make the interim payments on the withdrawal liability assessment until a final award is issued in the arbitration and ERF has demanded Quad make those payments. However, Quad has refused and continues to refuse to do so.

4. ERF brings this action for (a) a declaration that Quad is obligated to make interim payments on the withdrawal liability assessment until there is a final award in the arbitration proceeding as required by 29 U.S.C. §1401(d); (b) an order finding that Quad is delinquent in the making of, and is required to continue making, interim payments in connection with the withdrawal liability assessment; (c) a declaration that Quad owes ERF interim payments from June 2015 until the date of judgment, plus interest, penalties, and attorney's fees, pursuant to 29 U.S.C. §1132; and, (d) an order, pursuant to the Court's legal and equitable powers, requiring Quad to make the interim payments it has failed to make and is required to make under the withdrawal liability assessment, plus interest and penalties, in the amounts of no less than $321,151.22 for each month they remain unpaid for July 2015 forward. Because this is a continuing obligation, the exact amount will be subject to proof at time of trial or motion for summary judgment.

5. ERF also seeks recovery of delinquent contributions due and owing by Quad in connection with payments made to employees for unused vacation time.

6. Pursuant to Section 4301(g) of ERISA, 29 U.S.C. §1451(g), ERF served the Pension Benefit Guaranty Corporation with a copy of this Complaint by certified mail addressed as follows: Chief Counsel, Office of the Chief Counsel, Pension Benefit Guaranty Corporation, 1200 K Street, NW, Washington, DC 20005-4026 and on the Secretary of Labor and Secretary of the Treasury by certified mail, as required under 29 U.S.C. §1132(h).

**JURISDICTION**

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action under arises under Section 4301(a) and (c) of ERISA, 29 U.S.C. §1451(a) and (c).

**VENUE**

8. Venue is appropriate in this judicial district pursuant to Section 4301(d) of ERISA, 29 U.S.C. §1451(d), and 28 U.S.C. §1391 ), in that the GCIU-Employer Retirement Fund ("Plaintiff Fund" or "Fund") is administered at its principal place of business in City of Industry, California.

**PARTIES**

9. Plaintiff Fund, is a multiemployer pension plan within the meaning of sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§1002(37) and 1301(a)(3).

10. Plaintiff Board of Trustees of the GCIU-Employer Retirement Fund ("Board of Trustees") is comprised of the present trustees who are the named fiduciaries of the Plaintiff Fund within the meaning of Section 402(a) of ERISA, 29 U.S.C. §1102(a), and is the plan sponsor of the Plaintiff Fund within the meaning of sections 3(16)(B)(iii) and 4001(a)(10) of ERISA, 29 U.S.C. §§1002(16)(B)(iii) and 1301(a)(10). The Board of Trustees administers the Plaintiff Fund at 13191 Crossroads Parkway North, Suite 205, City of Industry, California 91746-3434.

11. Pursuant to sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. §§1132(a)(3) and 1451(a)(1), the Board of Trustees is authorized, as a named

fiduciary, to bring this action on behalf of the Plaintiff Fund, its participants, and beneficiaries for the purpose of collecting withdrawal liability and delinquent fringe benefit contributions. The Plaintiff Fund is also authorized to bring this action in its own name pursuant to a provision contained within Article VIII, Section 18 of the Fund's Trust Agreement, which permits all legal actions to be prosecuted in the name of the Fund.

12. Defendant, Quad/Graphics, Inc. is engaged in the commercial printing business. Quad is a Wisconsin corporation, with its headquarters and principal place of business in Sussex, Wisconsin. At all times relevant to this action, Defendant has been an "employer" as the term is defined by section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was engaged in an industry affecting commerce, as defined by section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a).

**FACTS**

**The Partial Withdrawal Liability Assessment**

13. In July 2010, Quad acquired World Color (USA), formerly Quebecor World (USA), Inc. ("Quebecor"). Quebecor had contributed to the Plaintiff Fund pursuant to various collective bargaining agreements ("CBAs") at several of its facilities. Quebecor had a CBA with the Graphic Communications Conference, International Brotherhood of Teamsters, Local 826-C, under which Quebecor was required to make contributions to the ERF on behalf of certain of its employees at Quebecor's Versailles, Kentucky facility.

14. In December 2010, the employees at the Versailles, Kentucky facility voted to decertify Local 826-C as their exclusive bargaining representative.

15. Quad notified ERF in writing of the decertification. Quad also notified ERF it would cease participation in the ERF at all of its other facilities.

16. On March 13, 2012, the ERF sent Quad notices of (a) 2010 Partial

Withdrawal Liability, and (b) 2011 Complete Withdrawal Liability, both of which the ERF revised on February 1, 2013. The ERF's notice also demanded payment from Quad on both liability assessments.  Under the February 1, 2013 assessment, ERF set forth a schedule of payments requiring Quad to pay $321,151.22 in monthly payments for 20 years on the 2010 Partial Withdrawal and $351,501.80 per month for approximately 8 1/2 years for the 2011 Complete Withdrawal.

17.  After ERF had audited Quad's Versailles facility, ERF was advised by Quad that Quad had not paid contributions due for unused vacation time paid to some of its employees between 2009 and 2011.  Quad represented to ERF that an additional $14,000 was owed to ERF for such payments.  Quad has never paid this amount, despite acknowledging it was owed as of July 2013.

18.  Quad disputed the 2010 Partial Withdrawal Liability Assessment and the calculation of the 2011 Complete Withdrawal Liability Assessment and related demands for payments as described in Paragraph 16, above.  Among other things, Quad took the position that even though it ceased participating in the Fund in 2010, the obligation to contribute for its employees at the Versailles facility did not cease until January 2011, such that it had no partial withdrawal liability for 2010.  ERF took the position that the obligation to contribute for Versailles ceased when the vote to decertify was confirmed in December 2010, thereby creating partial withdrawal liability for 2010.

**The Arbitration Proceedings**

19.  Quad submitted its dispute over the Withdrawal Liability Assessment to arbitration pursuant to Section 4221(a)(1) of ERISA, 29 U.S.C. §1401(a)(1). The arbitration proceedings were conducted in accordance with the Multi-Employer Pension Plan Arbitration Rules for Withdrawal Liability Disputes ("Rules") of the American Arbitration Association ("AAA").

20. Quad's challenges to ERF's liability assessments included the question of whether Quad's obligation to contribute to the ERF for Versailles ceased in December 2010 and whether the ERF properly calculated the 2010 Partial and 2011 Complete Withdrawal Liability Assessments.

21. Thomas J. Brewer ("Arbitrator") is presiding over the Arbitration Hearing, in which some testimony was held on February 24-26, 2015 and additional testimony and evidence was recently taken on November 3, 2015, in Los Angeles, California. On May 18, 2015, the Arbitrator issued and Interim Award, which is attached hereto as Exhibit 1.

22. In the Interim Award, the Arbitrator determined Quad's obligation to contribute to the ERF under the Versailles CBA did not cease in December 2010 but was instead extended beyond the date the ERF had originally used for calculating partial withdrawal liability. (Ex. 1, Interim Award at 13-14, ¶¶1-4). No finding was made affecting Quad's obligation to continue making its required interim payments on the original assessment pending the issuance of a Final Award.

23. In the Interim Award, the Arbitrator found the ERF had not complied with the law when determining the date on which Quad's obligation to contribute to the plan ceased. Adopting this "vacation deferral rule," the Arbitrator's interim decision found that as a matter of law, Quad's obligation to make contributions to the Plaintiff Fund for employees at the Versailles, Kentucky facility, and the cessation of such obligation, was dependent on when it paid its employees for the unused vacation days which were accrued in one year, but were paid out in a subsequent year.

24. This "vacation deferral rule" adopted by the Arbitrator had never been applied by ERF in its prior determinations of when a participating employer's obligation to make contributions to the Plaintiff Fund ceased, and is

inconsistent with longstanding case law holding that when a vote to decertify a union is certified by the National Labor Relations Board, an employer's obligation to contribute to a fund ceases.

25. As a result, the "vacation deferral rule" was not applied to Quad's other withdrawing facilities, many of which have provisions in their collective bargaining agreements that mirror the terms the Arbitrator relied upon in reaching his decision as to the Versailles, Kentucky facility.

26. ERF was directed by the Arbitrator to perform a reassessment of Quad's withdrawal liability consistent with the Arbitrator's findings, which included this new "vacation deferral rule". Since the consistent application of this rule will require a reassessment of the dates for all of Quad's facilities governed by CBAs having terms that are similar to those of the Versailles facility, (assuming the Arbitrator's interim award is made final and is affirmed), the original assessments as to these other facilities will also need to be adjusted.

27. Under any revised assessment applying the "vacation deferral rule" consistently to all of Quad's facilities, Quad will continue to have two monthly payment obligations greater than or equal to its original assessment. Based on the facts currently known to ERF, the reassessment will result in a partial withdrawal liability for 2011 of $113,075,692, requiring 20 years of monthly payments of $348,967.47, and a complete withdrawal liability in 2012 of $94,453,492, requiring 20 years of monthly payments of $331,056.27.

28. Once the ERF performs its reassessment, the Arbitrator will be required to issue his Final Award under 29 U.S.C §1401(d) in which he is required to state whether there has been any overpayment or underpayment by Quad towards its reassessed withdrawal liabilities and make adjustments, as necessary. As presently calculated by ERF, there should be no finding of an overpayment under the reassessed amount since the revised assessment produces a larger

liability than was originally assessed.

29. The ongoing Arbitration and the terms of the Arbitrator's final award have no impact on (a) Quad's liability for failing to make its required interim payments; and (b) Quad's liability for unpaid contributions.

30. As provided in 29 U.S.C. §1399(c)(2), until a final award is issued by the Arbitrator, Quad is required to make its interim payments on the withdrawal liability as was previously assessed by the ERF.

**Quad Ceases to Make Interim Payments**

31. Based on a claim that the Arbitrator's Interim Award was a final award as required by 29 U.S.C. §1401(d), Quad ceased making interim payments due on the challenged 2010 Partial Withdrawal Liability assessment.

32. Quad is obligated to continue making interim payments on the 2010 Partial Withdrawal Liability assessment because the Arbitrator's award is not a "final decision" under Section 4221(d) of ERISA, 29 U.S.C §1401(d).

33. Quad has not made any interim payments on the 2010 Partial Withdrawal Liability assessment since June 2015. Quad has further advised ERF that it does not intend to make any further interim payments on that assessment.

34. ERF has demanded that Quad resume making the interim payments on the 2010 Partial Withdrawal Liability assessment; however, Quad has refused. The missed monthly payments for July 2015 through December 2015, and going forward are $321,151.22 per month.

**The Failure to Comply With the Requests for Information**

35. On November 12, 2015, ERF sent request for information on Quad's various facilities pursuant to the provisions of 29 U.S.C. §1399(a). A true and correct copy of one such request is attached to this complaint as Exhibit 2.

36. Pursuant to the provisions of 29 U.S.C. §1399(a), "An employer shall, within 30 days after a written request from the plan sponsor, furnish such

information as the plan sponsor reasonably determines to be necessary to enable the plan sponsor to compliance with the requirements of this part."

37. The information requested from Quad is necessary in order for ERF to determine the full amount of Quad's liability for unpaid contributions owed for vacation time paid to Quad's employees at its various facilities.

38. In addition to the contributions Quad has admitted to owing to ERF for the unused vacation time paid to employees at the Versailles facility for 2009 through 2011, ERF is informed and believes, and thereon alleges, that Quad owes contributions for similar payments made to employees at the Versailles facility and Quad's other facilities for the years 2009 to 2013. This requested information is necessary for the determination of those additional amounts.

39. More than **t**hirty days have now passed and Quad has not provided any of the requested information. Additionally, despite inquiries made to Quad's counsel asking whether a response would forthcoming, ERF has heard nothing to date.

40. The ongoing Arbitration and the terms of the Arbitrator's final award have no impact on Quad's failure to provide the information requested of it under 29 U.S.C. 1399(a).

**FIRST CLAIM FOR RELIEF**

**(For monies due on the obligation to make interim payments pending rendition of Final Award in arbitration.)**

41. ERF incorporates by reference the allegations contained in Paragraphs 1 through 40 as if fully set forth herein.

42. Pursuant to 29 U.S.C. §1399(c)(2), withdrawal liability must be paid in accordance with the schedule set forth by ERF in its assessment "notwithstanding any request for review or an appeal of determinations of the amount of such liability or other schedule."

43. Under 29 U.S.C. §1401(d), regardless of any dispute submitted to arbitration, an employer is required to continue making interim payments until the arbitrator has issued a Final Award. The failure to make the required interim payments subjects an employer to liability for penalties, interest and attorney's fees, even if the arbitrator eventually rules in the employer's favor on a challenge to the assessment.

44. There has been no final award issued in the arbitration between the parties.

45. In June 2015, Quad ceased making payments on the assessment attributed to the partial withdrawal in 2010. As a result, monthly payments of $321,151.22 from July 2015 forward are due and owing to ERF, together with interest, penalties, and attorney's fees.

## SECOND CLAIM FOR RELIEF

**(For money due on obligation to make required contributions for payments made to employees on unused vacation time.)**

46. ERF incorporates by reference the allegations contained in Paragraphs 1 through 45 as if fully set forth herein.

47. Quad has failed to pay ERF the contributions admittedly owed for hours paid to employees of its Versailles facility between 2009 through 2011 for unused vacation time in the amount of approximately $14,000, the exact amount will be subject to proof at trial.

48. ERF is informed and believes and thereon alleges that Quad also paid employees of its Versailles facility for unused vacation time in 2012 and 2013 for which ERF is also due contributions under the terms of the CBA.

49. ERF is further informed and believes and thereon alleges that Quad has paid employees of its other facilities for unused vacation time in 2009, 2010, 2011, and 2012 for which ERF is also due contributions under the terms of the applicable CBA's.

50. As a result of Quad's a failure to make the required contributions for hours paid on unused vacation time, ERF has been damaged in an amount presently unknown but in no event less than $14,000 with the actual amount subject to proof at time of trial. ERF's inability to more accurately set forth the full amount owed for unpaid contributions on unused vacation time paid is a result of Quad's failure to comply with ERF's 29 U.S.C. §1399(a) demand for information.

## PRAYER FOR RELIEF

WHEREFORE, ERF prays for the following relief:

FIRST CLAIM FOR RELIEF

1. For damages in an amount subject to proof at time of trial for the unpaid interim payments required to me made on the assessment of withdrawal liability prior to the entry of a Final Award in Arbitration;

2. For an award of interest and penalties for the unpaid interim payments required to be made on the assessment of withdrawal liability to the entry of a final Award in Arbitration;

3. For an award of costs, including attorneys' fees incurred in bringing this action for the collection of interim payments, interest, and penalties;

4. For such other and further relief as the court deems just and proper.

SECOND CLAIM FOR RELIEF

5. For damages in an amount subject to proof a time of trial for the unpaid contributions due for unused vacation time paid to Quad's employees;

6. For an award of interest and penalties on the unpaid contributions do for unused vacation time paid to Quad's employees;

7. For an award of costs, including attorneys' fees incurred in bringing this action for the collection of interim payments, interest, and penalties;

///

///

///

8. For such other and further relief as the court deems just and proper.

Dated: January 6, 2016

LAW OFFICES OF ANTHONY T. DITTY
CORNWELL & BALDWIN

By: /s/ Anthony T. Ditty
    Anthony T. Ditty
    Attorneys for Plaintiffs, GCIU-Employer Retirement Fund and Board of Trustees of the GCIU-Employer Retirement Fund