O

# United States District Court
# Central District of California

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND; and BOARD OF TRUSTEES OF THE GCIU-EMPLOYER RETIREMENT FUND,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>QUAD/GRAPHICS, INC.,<br><br>　　　　　Defendant. | Case № 2:16-cv-00100-ODW (AFMx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR STAY [18]** |

## I.　INTRODUCTION

Plaintiffs GCIU-Employer Retirement Fund and Board of Trustees of the GCIU-Employer Retirement Fund (collectively "GCIU") bring this action against Defendant Quad/Graphics, Inc. under the Employee Retirement Income Security Act of 1974 ("ERISA"). GCIU alleges that Defendant failed to make interim payments on a withdrawal liability assessment as required under ERISA, and that Defendant failed to make certain other contributions pursuant to one or more collective bargaining agreements. Defendant now moves to dismiss the action, or in the alternative, to stay the first claim for relief pending arbitration. For the reasons discussed below, the

Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.[1] (ECF No. 18.)

## II. FACTUAL BACKGROUND

**A. 2010 Partial Withdrawal Liability**

GCIU is a multiemployer pension plan within the meaning of ERISA. (Compl. ¶ 9.) Defendant is a company in the commercial printing business. (*Id.* ¶ 12.) Pursuant to Defendant's collective bargaining agreement with its employees, Defendant was required to contribute to its employees' retirement fund, which was administered by GCIU. (*See id.* ¶¶ 10, 13.) In either December 2010 or January 2011, Defendant withdrew from the employee retirement fund. (*Id.* ¶¶ 14–15.)

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") imposes liability on employers that withdraw from an underfunded multiemployer pension plan. As a result, GCIU sent Defendant a notice of partial withdrawal liability for 2010, and a notice of complete withdrawal liability for 2011. (*Id.* ¶ 16.) For the 2010 partial withdrawal liability, GCIU set forth a payment schedule requiring Defendant to pay $321,151.22 per month for 20 years. (*Id.*) For the 2011 complete withdrawal liability, GCIU's payment schedule required Defendant to pay $351,501.80 per month for approximately 8 ½ years. (*Id.*) Defendant disputed that it was subject to any withdrawal liability for 2010, and disputed GCIU's calculation of its complete withdrawal liability for 2011. (*Id.* ¶ 18.) The parties submitted both issues to arbitration as required under 29 U.S.C. §1401(a)(1). (*Id.* ¶ 19.) However, pursuant to ERISA's "pay now, dispute later" provisions, 29 U.S.C. §§ 1399(c)(2), 1401(d), Defendant continued paying in full both the 2010 and 2011 withdrawal liability assessments pending a "final decision" by the arbitrator. (*Id.* ¶ 30.)

On May 18, 2015, the arbitrator issued an "Interim Award" determining that Defendant was not subject to partial withdrawal liability for 2010. (*Id.* ¶ 22, Ex. 1.)

---

[1] After considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

In June 2015, Defendant ceased making interim payments on the 2010 partial withdrawal liability assessment. (*Id.* ¶ 33.) GCIU demanded that Defendant resume making the interim payments because the arbitrator's award was not a "final decision," but Defendant refused. (*Id.* ¶¶ 33–34.) GCIU then requested that the arbitrator clarify that the "Interim Award" was not a final decision. (Pltfs.' Req. for Judicial Notice, Ex. 2.)[2] After full briefing on the issue, the arbitrator confirmed that the "Interim Award" was his "intended but nonfinal resolution" of the 2010 partial withdrawal liability issue. (*Id.*) The arbitrator also denied Defendant's subsequent request that he convert the Interim Award into a Partial Final Award. (Def.'s Req. for Judicial Notice, Ex. A.) In December 2015, the arbitrator issued an "Amended Interim Award" that resolved the dispute over the 2011 complete withdrawal liability. (Def.'s Req. for Judicial Notice, Ex. B.) The arbitrator also directed GCIU to, among other things, submit a "finalized revision" of Defendant's withdrawal liability and a schedule for payment consistent with the May 2015 Interim Award. (*Id.*)

**B. Delinquent Contributions**

Unrelated to the question of withdrawal liability, Defendant informed GCIU that it owed them approximately $14,000 in unpaid contributions for unused vacation time that GCIU paid to Defendant's employees. (Compl. ¶ 17.) In December 2015, GCIU requested documents from Defendant in order to calculate the full amount of unpaid contributions. (*Id.* ¶ 35.) Defendant has allegedly not responded to the document request, and thus GCIU does not know the exact amount owed. (*Id.* ¶ 39.)

**C. Procedural History**

On January 6, 2016, GCIU filed this action seeking to compel Defendant to continue making interim payments pending a final decision by the arbitrator, and to recover the unpaid contributions for the unused vacation time. (ECF No. 1.) On

---

[2] The Court grants the parties' Requests for Judicial Notice with respect to facts supported by documents outside of the pleadings to the extent the Court relies on them in this Order. Fed. R. Evid. 201(b).

February 4, 2016, Defendant moved to dismiss the Complaint. (ECF No. 18.) GCIU timely opposed, and Defendant timely replied. (*See* ECF Nos. 20, 21, 23.) With the Court's authorization, the parties also submitted additional documents and briefing on the issue of subject matter jurisdiction and the effect of a separate order issued by the arbitrator after this Motion was filed. (ECF Nos. 24–31.) Defendant's Motion is now before the Court for consideration.

### III.  LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed, even if not requested by the plaintiff. *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). However, a court may

deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

Defendant argues that the Court should dismiss or stay the claim for interim payments because the arbitrator has "retained jurisdiction" to decide that question. (Mot. 7–9.) Alternatively, Defendant argues that the arbitrator has issued a "final decision" on Defendant's 2010 partial withdrawal liability as a matter of law, and is thus no longer required to make interim payments. (Mot. 9–13.) As to the claim for unused vacation contributions, Defendant argues that portions of the claim are unripe, and that other portions of the claim are moot. Alternatively, Defendant argues that GCIU fails to state a claim for relief for unused vacation contributions. (Mot. 13–17; Reply 7–10.) The Court rejects each argument except the last one.

**A.  Interim Payments**

    **1.  The Arbitrator's Jurisdiction**

In December 2015, the arbitrator directed GCIU to draft a "finalized revision" of Defendant's withdrawal liability and a schedule for payment consistent with the May 2015 Interim Award. Moreover, the arbitrator stated that he would "retain continuing jurisdiction over all of the issues expressly reserved above for future proceedings." (Def.'s Req. for Judicial Notice, Ex. B.) Defendant argues that this reservation of jurisdiction includes the question of interim payments, and thus this Court should essentially refer the matter to arbitration. GCIU responds that ERISA does not grant the arbitrator jurisdiction over the issue of interim payments, so there was nothing for him to "reserve." The Court holds that to the extent the arbitrator did purport to reserve such issues, he acted in excess of his authority.

As previously noted, where there is a dispute between the fund and the employer over the amount of withdrawal liability assessed by the fund, the employer must nevertheless make interim payments on the assessment until a "final decision" is

issued by an arbitrator. 29 U.S.C. §§ 1399(c)(2), 1401(d). If the employer fails to do so, the fund may file a civil action to collect or compel the interim payments, even if the arbitration is still pending. 29 U.S.C. § 1451(d); *Lads Trucking Co. v. Bd. of Trustees of W. Conference of Teamsters Pension Trust Fund*, 777 F.2d 1371, 1375 (9th Cir. 1985) ("We have enforced the requirement of payment during arbitration."); *Trustees of Amalgamated Ins. Fund v. Geltman Indus., Inc.*, 784 F.2d 926, 932 (9th Cir. 1986); *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Mar-Len, Inc.*, 30 F.3d 621, 624 (5th Cir. 1994) ("If the employer refuses to make interim payments, a plan fiduciary . . . may file a civil action in federal court to collect."); *Debreceni v. Merchs. Terminal Corp.*, 889 F.2d 1, 6 (1st Cir. 1989) ("[T]he MPPAA empowers a court to order the making of interim withdrawal payments forthwith, notwithstanding the pendency of arbitration of a fund's withdrawal claim."); *Carriers Container Council, Inc. v. Mobile S.S. Ass'n Inc.-Int'l Longshoreman's Ass'n, AFL-CIO Pension Plan & Trust*, 896 F.2d 1330, 1347 (11th Cir. 1990) (reversing a district court judgment that declined to compel interim payments). Indeed, the requirement of interim payments would be "largely illusory" without a remedy for prompt enforcement—which arbitration is not. *Debreceni*, 889 F.2d at 6; *see also id.* at 4 ("To require the Fund . . . to submit to arbitration on the question of whether interim withdrawal liability payments need be made would result in a de facto suspension of such payments until the question is resolved by arbitration."). To that end, the court's civil contempt power can be employed to ensure that timely interim payments are made during arbitration. *Chi. Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000); *Cent. States, Se. & Sw. Areas Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868, 876 (7th Cir. 1998).

Here, to the extent that the arbitrator did in fact reserve to himself the question of interim payments, such a reservation is void. Requiring the issue of interim payments to be arbitrated would effectively deprive the fund of a quick and effective—and therefore meaningful—remedy in the event that the employer

wrongfully chooses to stop making such payments. Thus, the Court declines to either dismiss this claim or exercise any discretion it may have to stay the claim and refer the issue to arbitration.

### 2. Final Decision

Defendant next contends that the arbitrator has reached a "final decision" on the question of its 2010 withdrawal liability as a matter of law, and that Defendant's obligation to make interim payments therefore ceased. Defendant argues that because statutory interpretation is ultimately an Article III responsibility, this Court has the power to effectively overrule the arbitrator's decision that the "Interim Award" he issued is not a "final decision" under § 1401(d). The Court is not persuaded.

Defendant's argument cleverly conflates two very distinct issues: (1) the legal meaning of the statutory phrase "final decision"; and (2) the factual question of whether the arbitrator intended to express only his tentative thoughts or if he intended to make a final pronouncement on the dispute before him. The latter issue is the real issue that Defendant is putting before the Court, and it is surely one to which only the arbitrator knows the answer; the Court has no telepathic ability to know when the arbitrator's thoughts and opinions are tentative and when they are final. Here, the arbitrator stated that "it is not intended that . . . the Interim Award . . . be regarded as final . . . pursuant to ERISA." (Def.'s Req. for Judicial Notice, Ex. B; *see also* Compl. Ex. 1.) Moreover, in direct response to the question whether the Interim Award was final or only tentative, the arbitrator repeated that "the Interim Award was intended to advise the parties of this Tribunal's *intended but nonfinal resolution* of the [2010 partial withdrawal liability issue]," and that the purpose of this interim/non-final designation was in part "to avoid the implication that [he] ha[d] lost some of [his] authority under *functus officio* principles to reconsider the pertinent nonfinal decision." (Pltfs.' Req. for Judicial Notice, Ex. 2 (emphasis added).) It is clear, then, that the arbitrator contemplated a possible change of heart (however unlikely), and did not wish to be conclusively bound by his Interim Award. In the face of this, the Court

cannot just declare his tentative ruling to be his final opinion on the dispute. The Interim Award is no different from a court's tentative ruling on a motion; while there is a good chance that it will ultimately become the final ruling, it is not the province of anyone other than the court—or, here, the arbitrator—to declare it so.

None of the orders issued after the Interim Award compels a different result. Although the arbitrator did not cite the possibility of reconsidering the 2010 withdrawal liability issue as the reason he declined to convert the Interim Award into a partial final award, the Court cannot conclude from this that reconsideration is now totally off the table. For the same reason, the arbitrator's subsequent order declining to modify the interim award on the specific grounds sought by GCIU does not necessarily convert the Interim Award into a final decision. Until the arbitrator expressly announces that a particular decision is his final decision, the Court sees no need for it to decide the issue for him.

The cases Defendant cites are all distinguishable. In *Greater Pennsylvania Carpenter's Pension Fund v. Novinger's, Inc.*, No. CIV.A. 14-956, 2015 WL 5691093 (W.D. Pa. Sept. 28, 2015), the court found that the arbitrator had issued a final decision where the arbitrator repeatedly and explicitly stated that that her ruling was "dispositive" and that the defendants were "the prevailing party in this proceeding." *Id.* at *2. Here, of course, the arbitrator repeatedly stated that he did *not* intend his ruling to be final. *Novinger's* also undermines Defendant's argument that the Court should ignore the arbitrator's pronouncements on the issue of finality.

Nor is *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95 (D.D.C. 2008), apposite. The only issue addressed by that court was whether the fund could unilaterally increase the amount withdrawal liability assessed during the arbitration proceeding; it did not address the issue of what constitutes a "final decision" by the arbitrator, or how that issue should be analyzed by the courts.

The remaining cases cited by Defendant are not ERISA cases. For that and other reasons the Court need not describe at length here, the Court also finds those

cases unpersuasive. The Court therefore declines to find that the arbitrator has in fact reached a "final decision" on the question of the 2010 withdrawal liability.

**B.     Delinquent Contributions**

    **1.     Ripeness and Mootness**

GCIU's second claim for relief seeks to recover delinquent contributions for unused employee vacation time at Defendant's Versailles facility and other facilities. Defendant argues in its moving papers that this claim is not ripe until GCIU sends a demand letter to Defendant for payment of a specific sum, and Defendant rejects that demand. GCIU responds that sending a demand letter and receiving a rejection is not a constitutional precondition to filing suit; all that matters is that the payments were not made when due. After receiving GCIU's Opposition, Defendant then calculated the sum owed for the Versailles facility and tendered payment of that amount to GCIU. Thus, Defendant argues in Reply that the claim is now moot as to the Versailles facility (although it maintains that the claim is still not ripe as to the other facilities). GCIU submitted a sur-reply contesting that the amount tendered by Defendant is sufficient to cover the delinquent contributions. The Court agrees with GCIU that the claim is neither unripe nor moot.

Ripeness and mootness are on opposite ends of the justiciability spectrum. A claim is ripe only where "the plaintiffs face a realistic danger of sustaining a direct injury" for the violation of a legally protected right. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). On the other hand, "[a] claim is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 933 (9th Cir. 2008) (citations and internal quotation marks omitted). "Dismissal of a case on grounds of mootness would be justified only if it were absolutely clear that the litigant no longer had any need of the judicial protection that it sought." *Id.* (internal quotation marks and brackets omitted).

With respect to the Versailles facility, Defendant tendered payment to GCIU for

the amount of the outstanding contributions, plus liquidated damages, plus interest through July 16, 2013. GCIU argues that the payment was insufficient because the interest should have been calculated and paid through February 18, 2016, not July 2013. Thus, there is still a live controversy at least with respect to the outstanding interest for the Versailles facility.

As to the other facilities, GCIU alleges that such contributions were not paid when due and are still outstanding. GCIU has thus clearly suffered a constitutional injury that is ripe for litigation. *Thomas*, 220 F.3d at 1138 ("[R]ipeness coincides squarely with standing's injury in fact prong."). Defendant cites no relevant authority for the proposition that such a claim is constitutionally unripe before a pension plan sends a demand letter that is rejected by the employer.[3] All that matters is that the payments were not made when due.

For these reasons, the Court declines to hold that this claim is either unripe or moot. However, based on the recent payment made by Defendant, the Court concludes that it would be beneficial for GCIU to amend its claim to state what it is still owed for all facilities (in principle, if not an exact amount).

### 2. Failure to State a Claim

Finally, Defendant argues that GCIU has not stated a claim for relief for the unused vacation contributions because it recites only the bare elements on the claim without sufficient supporting facts. The Court agrees that GCIU's claim is insufficiently pleaded. A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of a complaint is "to give the defendant fair notice of the factual basis of the claim." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 841 (9th Cir.

---

[3] *St. Paul Fire & Marine Ins. Co. v. Centex Homes*, No. ED CV14-01216 AB JCX, 2014 WL 5013062, at *3–4 (C.D. Cal. Oct. 7, 2014), is easily distinguished. There, the substantive right allegedly violated was a contractual right to cooperation; such a right logically cannot be violated until the plaintiff demands cooperation from the defendant. Here, on the other hand, the GCIU's right to payment was violated immediately upon Defendant's failure pay GCIU by a certain date.

2007). Here, GCIU alleges that Defendant owes unpaid contributions for the Versailles facility from 2009 through 2013 pursuant to "the terms of the [Collective Bargaining Agreement]," and that it also owes unpaid contributions for other unnamed facilities owned by Defendants "under the terms of the applicable CBAs." (Compl. ¶¶ 48–49.) It is not clear what other facilities GCIU is referring to, which provision of the Versailles collective bargaining agreement was violated, or which other collective bargaining agreements may be at issue. *Cf. Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) ("A plaintiff fails to sufficiently plead the terms of the contract if he does not allege in the complaint the terms of the contract or attach a copy of the contract to the complaint."). Indeed, it is not even clear if GCIU is asserting a statutory claim or if it is asserting a common law claim. This is not sufficient to put Defendant on notice of the factual basis for the claims against it.

GCIU argues that it does not have the information it requires to adequately plead its claim because Defendant has not responded to its information requests under 29 U.S.C. § 1399(a). While understandably frustrating, this does not relieve GCIU of its pleading obligations. If GCIU requires those documents before it can state a claim, it should avail itself of the appropriate remedy for Defendant's lack of response.

However, because there is a possibility that GCIU could add additional facts that would state a claim for relief, the Court will give GCIU leave to amend.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss or Stay. (ECF No. 18.) Defendant's Motion is denied in its entirety with respect to GCIU's first claim. However, Defendant's Motion with respect to GCIU's second claim is granted with leave to amend. GCIU may file a First Amended Complaint within 21 days that is consistent with this Order.

**IT IS SO ORDERED.**

March 22, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**