# United States District Court
# Central District of California

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND AND BOARD OF TRUSTEES OF THE GCIU-EMPLOYER RETIREMENT FUND,<br><br>Plaintiff,<br><br>v.<br><br>QUAD/GRAPHICS, INC.,<br><br>Defendant. | Case № 2:16-CV-00100-ODW-AFM<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW; ORDER GRANTING DEFENDANT'S MOTIONS IN LIMINE NOS. 3 & 4 [115, 116]** |

## I. INTRODUCTION

On September 27 and 28, 2017, the Court held a bench trial on a bifurcated issue in this ERISA action. (ECF Nos. 139, 140.) Plaintiffs (collectively "ERF") filed this lawsuit alleging that Defendant ("Quad") failed to make required pension contributions to ERF under various collective bargaining agreements ("CBAs").

ERF and Quad defined the issue at trial as:
> Whether [ERF] ha[s] satisfied their burden of proof in showing that [Quad] is obligated under its CBAs and [ERF]'s Trust Agreement to make any contributions, and if so, under which terms, in what amount, and for what period of time.

(Pretrial Order, ECF No. 120-1.) At the final pretrial conference on September 22, 2017, the Court bifurcated the trial. (*See* Min. Order, ECF No. 133.) The first phase

addressed whether ERF could support its claim of contribution damages as shown in ERF's Exhibit 81 ("Exhibit 81"). (*Id.*) ERF purports that Exhibit 81 is a summary of contributions Quad owes ERF for vacation entitlements in 2011 under the relevant CBAs at facilities in Dickson, Tennessee ("Dickson"), Fernley, Nevada ("Fernley"), Waukee, Iowa ("Waukee"), and Versailles, Kentucky ("Versailles").

Also pending before the Court are Defendant's Motions in Limine Nos. 3 & 4, which seek to exclude Exhibit 81.

At phase one of the bifurcated bench trial, the parties elicited testimony from:
- Teresa Roberts, a former Quad employee;
- Jane Downs, a Quad employee;
- Judith Knore, assistant administrator of the GCIU-Employer Retirement Fund;
- Carl Coates, an auditor retained by ERF.

Following trial, the parties submitted briefing.[1] (ECF Nos. 147, 148.) Having carefully reviewed and considered the evidence and the arguments of counsel as presented at trial and in their written submissions, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such, and vice versa.

## II. FINDINGS OF FACT

**A. The Parties**

1. Plaintiff GCIU-Employer Retirement Fund (the "Fund") is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3).

---

[1] Quad objects to ERF's post-trial brief on the grounds that it was submitted past the thirty-five day deadline the Court ordered. (ECF No. 149.) The Court agrees that ERF's brief was submitted late, but declines to strike or simply ignore ERF's briefing, as Quad appears to suggest the Court should do.

2. Plaintiff Board of Trustees of the GCIU-Employer Retirement Fund includes the present trustees who are the named fiduciaries of the Fund within the meaning of 29 U.S.C. § 1102(a), and is the plan sponsor of the Fund within the meaning of 29 U.S.C. §§ 1002(16)(B)(iii) and 1301(a)(10).

3. The Board of Trustees is authorized, as a named fiduciary, to bring this action on behalf of the Fund, its participants, and beneficiaries for the purpose of collecting delinquent benefit contributions.

4. The Fund is also authorized to bring this action in its own name pursuant to a provision contained within Article VII, Section 18 of the Fund's Trust Agreement, which permits all legal actions to be prosecuted in the name of the Fund.

5. Quad is a Wisconsin corporation, with its headquarters and principal place of business in Sussex, Wisconsin. Quad is engaged in the commercial printing business.

6. In July 2010, Quad acquired World Color (USA), formerly Quebecor World (USA), Inc. ("Quebecor"). Quebecor was a party to various CBAs covering its facilities at Versailles, Dickson, Waukee, and Fernley.

**B. The Claims**

7. Quad was bound by CBAs under which it was obligated to make contributions to ERF on behalf of certain employees. This obligation included the reporting and payments of contributions to ERF for vacation and, as to Versailles, also personal time.

8. Quad was also bound to comply with the terms of ERF's Trust Agreement.

9. The CBAs at issue in this action include those covered at Quad's facilities at Versailles (effective November 5, 2017); Dickson (effective

June 10, 2008); Waukee (effective January 11, 2009); and Fernley (effective December 18, 2006).

10. Quad and the union representing ERF participants at Dickson entered into the "Agreement Supplementing and Modifying the Current Collective Bargaining Agreement," on December 22, 2010 (the "December 2010 Dickson Agreement"). Quad and the union representing ERF participants at Waukee entered into the "Agreement Supplementing and Modifying the Current Collective Bargaining Agreement," on December 21, 2010 (the "December 2010 Waukee Agreement"). Quad's predecessor and the union representing ERF participants at Fernley entered into the "Agreement Between World Color Printing (USA Corp.) and Local 715C Graphic Communications Conference International Brotherhood of Teamsters," on November 30, 2009 (the "November 2009 Fernley Agreement").

11. ERF received copies of the Versailles CBA on January 29, 2008; the Dickson CBA on August 15, 2008; the Waukee CBA on May 14, 2009; the Fernley CBA on April 20, 2007; the December 2010 Dickson Agreement on December 27, 2010; the December 2010 Waukee Agreement on December 27, 2010; and the November 2009 Fernley Agreement on November 30, 2009.

12. The National Labor Relations Board Certifications of Results of Election, dated December 27, 2010 and February 1, 2011, certified, respectively, the Versailles and Fernley facilities de-certifications. ERF received a copy of the Certification of Results in letters dated, respectively, January 10, 2011 and February 3, 2011.

13. On April 15, 2011, ERF gave notice of its intent to audit Quad's Versailles, Dickson, Waukee, and Fernley facilities.

14. ERF claims that Quad owes delinquent contributions under the obligations set forth under the relevant CBAs requiring Quad to remit contributions to the Fund and pursuant to the terms of ERF's Trust Agreement.
15. Under the terms of the CBAs for all four of Quad's locations, contributions were owed for all hours worked or paid, which included vacation time. Entitlement to vacation time was based on an employee's length of employment, and the number of hours they worked in a given year.
16. Under the Fernley and Versailles CBAs, an employee could only be "eligible" for vacation "as of January 1, of any year."
17. In December 2010, the employees of the Versailles facility voted to decertify their union and the decertification vote was later certified by the National Labor Relations Board on December 27, 2010.
18. The Fernley CBA continued only through December 31, 2010.
19. On December 21, 2010, Quad and the Dickson employees' union signed a midterm modification agreement of the Dickson CBA, which provided for the termination of Quad's obligation to contribute to ERF, and noted that the termination "shall be effective with respect to all employment hours worked or paid after the close of the last shift on Saturday, January 1, 2011."
20. On December 21, 2010, Quad and the Waukee employees' union signed a midterm modification agreement of the Waukee CBA, which provided for the termination of Quad's obligation to contribute to ERF, and noted that the termination "shall be effective with respect to all employment hours worked or paid after the close of the last shift on Saturday, January 1, 2011."

21. With respect to all four facilities, Quad made no contributions to ERF for vacation time that was "banked" or credited to its employees on January 1, 2011, based on work performed in 2010.

22. ERF claims that Quad owes it contributions for vacations paid in 2011, and as to that claim:

   i. For Dickson and Waukee, binding CBAs terminated the Quad obligation to contribute to ERF after January 1, 2011.

   ii. As to Versailles and Fernley, the relevant CBAs terminated before January 1, 2011, the date the employees' vacation time vested. Vacations allotted in 2011 on which ERF claims contributions, were afforded under a Quad non-union policy, and not under a CBA. The Quad non-union policy required no contributions to ERF.

### III. CONCLUSIONS OF LAW

22. 29 U.S.C. § 1145 provides:

Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

23. The Ninth Circuit has held that "ERISA does not require employers to provide pension plans; the obligation to do so, and to contribute to them, springs from a privately made contract." *Trustees of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009).

24. Because the Versailles and Fernley CBAs terminated before January 1, 2011—the date the employees' vacation would have vested for hours

worked in 2010—the employees' vacation time did not vest under those CBAs for hours worked in 2010.

25. The CBA modifications for Waukee and Dickson affirmatively terminated Quad's obligations to contribute to ERF effective after the close of the law shift on January 1, 2011.

26. Therefore, there are no CBAs for Versailles, Fernley, Waukee, or Dickson, under which Quad owes ERF contributions for 2011 vacation entitlements.

27. ERF has not proved that Quad owes any contributions for 2011 vacation entitlements for Versailles, Waukee, Dickson, and Fernley.

### IV. QUAD'S MOTIONS IN LIMINE NOS. 3 & 4

Prior to the Court's order bifurcating trial in this case, Quad moved in limine to exclude Exhibit 81. (ECF Nos. 115, 116.) Quad argued that because it owed no contributions for 2011 vacation entitlements, Exhibit 81 was irrelevant. Because the Court finds that Quad does not owe contributions to ERF for 2011 vacation entitlements, Exhibit 81 is irrelevant to the issues to be tried. Therefore, the Court **GRANTS** Quad's Motions in Limine Nos. 3 & 4.

///
///
///
///
///
///
///
///

## V. CONCLUSION

In light of the Court's findings of fact and conclusions of law, the Court **ORDERS** the parties to meet and confer and provide the Court with a status report no later than **April 2, 2018**, regarding the necessity of any further motion practice or proceedings. Additionally, for the reasons discussed above, the Court **GRANTS** Quad's Motions in Limine Nos. 3 & 4. (ECF Nos. 115, 116.)

**IT IS SO ORDERED.**

March 9, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**